FILED
2016 Jul-29  AM 08:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **DERRICK FERRELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **1:15-cv-1200-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** | |

## MEMORANDUM OPINION

Derrick Ferrell ("Ferrell") brings this action pursuant to Section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. §405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I. Procedural History

Ferrell filed his application for Title II Disability Insurance Benefits on September 13, 2012, alleging a disability onset date of December 25, 2010 due to a traumatic head injury that caused swelling of the head, blurred vision, and swelling

1

in the right eye. (R. 118, 142, 145). After the SSA denied his application, Ferrell requested a hearing before an ALJ. (R. 74–78, 79–80). The ALJ subsequently denied Ferrell's claim, (R. 9), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1–6). Ferrell then filed this action pursuant to § 405(g) on July 15, 2015. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the five step analysis, the ALJ found that Ferrell had not engaged in substantial gainful activity since December 25, 2010, and therefore met Step One. (R. 14). Next, the ALJ found that Ferrell satisfied Step Two because he suffered from the severe impairments of "status post closed C1 vertebrae fracture, skill fracture, complicated scalp laceration, and traumatic ptosis of the right eye." (*Id.*). The ALJ then proceeded to the next step and found that Ferrell did not satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

4

impairments." (R. 16). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four where he determined that Ferrell has the residual functional capacity (RFC) to "perform a full range of work at all levels . . . ." (R. 17). However, the ALJ restricted Ferrell from working "around unprotected heights, dangerous or moving machinery, ladders ropes or scaffolds . . . [and] job[s] requiring pushing and/or pulling bilaterally with his upper extremities . . . [and] overhead reaching." (*Id.*). In light of Ferrell's RFC, the ALJ determined that Ferrell "is unable to perform any past relevant work." (R. 21). Lastly, in Step Five, the ALJ considered Ferrell's age, education, work experience, and RFC, and determined "there are jobs that exist in significant numbers in the national economy that [Ferrell] can perform." (R. 21). Therefore, the ALJ found that Ferrell "has not been under a disability, as defined in the Social Security Act, from December 25, 2010." (R. 22).

## V. Analysis

Ferrell's contention of error centers on his emotional and psychological impairments. Specifically, Ferrell claims that the ALJ erred by not finding these impairments "severe" within the regulatory definition and by not considering them in combination with his physical impairments in the RFC.[1] Doc. 11 at 4. Allegedly,

---

[1] Ferrell also challenges the Appeals Council's denial of review. However, except for his general contention that the Appeals Council erred when it failed to reverse the ALJ, Ferrell provided no specific argument to support his contentions. *See* doc. 11 at 4. In light of Ferrell's failure to raise

contrary to the evaluation of Dr. Robert A. Storjohann, the ALJ's RFC "contains no psychological or emotional limitations or impairments that have anything whatsoever to do with [Ferrell's] inability to sustain competitive employment." *Id.* at 3. The record belies Ferrell's contentions.

A review of the record shows that the ALJ correctly evaluated the medical evidence regarding Ferrell's mental status. Specifically, after he determined that Ferrell suffered from severe physical impairments, the ALJ turned to a detailed discussion regarding Ferrell's mental status. (R. 14). The ALJ first looked to consulting psychologist Dr. Robert G. Summerlin's psychological examination on November 7, 2012, (*Id.*; R. 294), during which Ferrell self-reported his mood as "like every other day, I reckon. Kinda happy go lucky," (R. 64; 297). Dr. Summerlin noted that Ferrell reported "no significant emotional symptoms secondary to head injury," that Ferrell's affect was "broad and appropriate," and that Ferrell had only a "slight impairment in social, occupational, or personal functioning." (R. 64; 297; 299). Next, the ALJ looked at Dr. Storjohann's evaluation which diagnosed Ferrell as having "major depression, single episode, severe without psychotic features, chronic; generalized anxiety disorder; specific

---

any other basis for this appeal, he has waived other grounds upon which he might challenge the ALJ's decision. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (claimant waived an issue because he did not elaborate on the claim or provide citation to authority regarding the claim); *N.L.R.B. v. McClain of Georgia*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

phobia, other type with panic attacks; cognitive disorder; schizoid personality disorder; paranoid personality disorder; and personality disorder, mixed type." (R. 15). The ALJ, however, gave little weight to this evaluation because Dr. Storjohann's findings and opinions were "wildly inconsistent with the great weight of the objective medical evidence and with [Ferrell's] own testimony." (R. 15).[2] To support this finding, the ALJ pointed out that although Ferrell told Dr. Storjohann that he spent most of his time in his bedroom, Ferrell testified at the hearing before the ALJ that he had recently served a month in jail for failing to pay a speeding ticket, and that Ferrell's own reports that he helps with the dishes, sometimes drives his father to appointments even though he has no license, and walks to the school bus stop to pick up his brother's children contradicted Dr. Storjohann's findings. (*Id.;* R. 44).[3] Lastly, the ALJ pointed out that Dr. Storjohann's diagnoses were inconsistent with the medical records as a whole, which had a marked

---

[2] Drs. Storjohann, Estock, and Summerlin each performed a single consultative evaluation of Ferrell. "The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician." *Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 842 (11th Cir. 2013). Still, although the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," the ALJ is "required to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006). Finally, the ALJ must consider the impairments alleged and state "the weight accorded each item of impairment evidence and the reason for his decisions on such evidence. The ALJ must state specifically the weight accorded each item of evidence and the reasons for his decision." *Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986).

[3] The ALJ further noted Ferrell's self-reported daily activities, which included being able to "bathe, dress, and groom himself without assistance . . . [and] perform[] household chores, including cooking, doing the laundry, and simple gardening." (R. 15). The ALJ also touched on the fact that Ferrell also did not mention depression as a disability until the hearing and, when questioned by the ALJ, claimed he did not know that he had symptoms of depression. (R. 50).

absence of psychiatric complaints, and Ferrell's own testimony which indicated no history of mental impairments prior to December 2010. (R. 15).

Finally, the ALJ discussed the review performed by the state psychological consultant, Dr. Robert Estock, who determined that Ferrell had an organic mental disorder. (R. 16). However, the ALJ noted that Dr. Estock's diagnosis was also inconsistent with the medical record as Ferrell "was not diagnosed with a traumatic brain injury and there is no follow-up treatment to suggest he has an organic mental disorder secondary to the injuries he received in the December 2010 accident." (*Id.*). Moreover, the ALJ also noted that Dr. Estock admitted to giving significant weight to third-party evaluations in reaching his diagnosis of organic mental disorder, and that Dr. Estock ultimately concluded that Ferrell did not have listing level functional limitations. (*Id.*; R. 65).

Ultimately, after weighing the evidence of the three consultative psychologists, the ALJ concluded that the existence of a mental impairment could not be medically determined. (R. 16). The court finds no error in this finding. In fact, a careful review of the record shows that the ALJ's finding that Ferrell did not suffer from a mental impairment is based on substantial evidence. As the ALJ pointed out, Dr. Storjohann's findings—which form the basis for Ferrell's contentions of error in this appeal—are "wildly inconsistent" with the record. (R. 15). Therefore, because the ALJ gave specific reasons for discounting Dr.

Storjohann, as well as Dr. Estock's evaluations, the court rejects Ferrell's arguments that the ALJ erred in omitting them from the RFC.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Ferrell is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 29th day of July, 2016.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE